# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| AMTAX HOLDINGS 436, LLC, an Ohio limited liability company, and PROTECH 2004-D, LLC, an Ohio limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>FULL CIRCLE VILLAGEBROOK GP, LLC, an Illinois limited liability company,<br><br>Defendant. | Case No. 1:23-cv-14409<br><br>**COMPLAINT** |

Plaintiffs AMTAX Holdings 436, LLC ("AMTAX") and Protech 2004-D, LLC ("Protech" and collectively with AMTAX, "Plaintiffs"), for their Complaint against Defendant Full Circle Villagebrook GP, LLC ("Full Circle"), hereby state and allege as follows:

## INTRODUCTION

1. AMTAX and Protech are, respectively, the Investor Limited Partner and Special Limited Partner (collectively, the "Limited Partners") of the Villagebrook Apartments Limited Partnership (the "Partnership"), which owns and operates a 189-unit multi-family affordable housing project located in Carol Stream, Illinois (the "Project"). AMTAX contributed virtually all the capital the Partnership used to develop the Project, totaling more than $4.5 million dollars, and holds a 99.98% ownership stake in the Partnership.

2. Full Circle is a for-profit developer and the General Partner of the Partnership. Full Circle contributed only $50 in capital to the Partnership but has received substantial fees and other economic benefits in exchange for developing and operating the Project. In its role as General

Partner, Full Circle owes the Limited Partners fiduciary duties, including the duties of loyalty and care.

3. The Partnership and the rights and obligations of Full Circle as the General Partner, AMTAX as the Investor Limited Partner, and Protech as the Special Limited Partner are governed by an Amended and Restated Agreement of Limited Partnership, as amended (the "LPA") and Illinois law. A copy of the LPA is attached hereto as **Exhibit A**.

4. The Project owned by the Partnership is a "qualified low-income housing project" eligible for federal income tax credits and other tax benefits under the Low Income Housing Tax Credit ("LIHTC") provisions of the Internal Revenue Code, 26 U.S.C. § 42 ("Section 42"). Those tax credits are earned over a fifteen-year period commonly referred to as the "Compliance Period."

5. Section 7.4.J of the LPA contains a provision permitting Full Circle to purchase the Limited Partners' interests in the Partnership following the end of the Compliance Period (the "Option"), subject to compliance with Section 42 and pursuant to an appraisal process set out in the LPA. (Ex. A at 53-54 (§ 7.4.J).)

6. The Compliance Period ended on December 31, 2019, and on November 4, 2020 Full Circle purported to exercise the Option to purchase the Limited Partners' interests in the Partnership. Full Circle failed to comply with the LPA's procedures governing Full Circle's exercise of the Option, however, including by failing to seek and obtain AMTAX's approval for the appraiser. Moreover, the appraiser that Full Circle secretly, unilaterally, and improperly selected conducted a materially flawed appraisal.

7. Notwithstanding Full Circle's failure to comply with the LPA in purportedly exercising the Option, the Limited Partners offered to assume that Full Circle had validly exercised its Option if Full Circle would agree to correctly value the Limited Partners' interests in the

Partnership. Full Circle rejected the Limited Partners' offer and instead filed a lawsuit in this Court on December 23, 2020 in an attempt to force the Limited Partners to accept the materially flawed appraisal. *See Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC, et al.*, Case No. 1:20-cv-07712 (N.D. Ill.) ("*Full Circle I*").

8. On September 15, 2023, the Court hearing *Full Circle I* denied Full Circle's motion for summary judgment, granted the Limited Partners' cross-motion for summary judgment, and entered judgment in favor of the Limited Partners. A copy of the Court's summary judgment order is attached hereto as **Exhibit B**. The Court found that Full Circle had "failed to comply with the LPA's appraisal provisions," such that "the appraisal . . . is not binding on the Limited Partners." (Ex. B at 14.) Because the Limited Partners prevailed on this threshold issue, the Court did not reach the parties' dispute concerning the correct methodology to value the Limited Partners' interests in the Partnership. The Court noted, however, "that a review of the briefs and record reveals many likely disputed facts on th[at] matter." (*Id.* at 13.) The Court accordingly denied Full Circle's motion for summary judgment on the valuation methodology dispute (*id.*) and dismissed *without prejudice* the portion of the Limited Partners' counterclaim addressing that issue. (*Id.* at 14 n.7.)

9. On September 25, 2023, Full Circle sent the Limited Partners a notice purporting to exercise Full Circle's Option for a second time (the "Notice"). A copy of the Notice is attached hereto as **Exhibit C**. The Notice was the first communication between Full Circle and the Limited Partners following entry of judgment in favor of the Limited Partners in *Full Circle I*. In the Notice, Full Circle requested that the Investor Limited Partner approve one of four proposed appraisers in order to "determine the fair market value for the Project . . . ." (Ex. C at 1.) The Notice did not state, or even imply, that the selected appraiser would also value the Limited

3

Partners' interests, nor did Full Circle make any reference to the appropriate methodology for arriving at such a value.

10. As a consequence of Full Circle's September 25, 2023 Option exercise, and in light of the still unresolved dispute between the partners concerning the appropriate methodology to value the Limited Partners' interests in connection with the Option, the Limited Partners now seek a declaratory judgment that Section 7.4.J of the LPA requires (1) the Limited Partners' interests to be valued based on what the Limited Partners would receive if the Property were sold and residual sale proceeds were distributed pro rata based on the partners' positive capital account balances, and (2) the General Partner to select an appraiser from CBRE Group, Inc. ("CBRE") or Jones Lang LaSalle, Inc. ("JLL") who specializes in LIHTC-related valuations and has not previously performed work for the General Partner or its litigation counsel, and to close on the purchase of the Limited Partners' interests within twelve months.

## PARTIES

11. Plaintiff AMTAX is an Ohio limited liability company with its principal place of busines in Denver, Colorado. AMTAX's sole member is AMTAX Holdings Corporate Fund (Del.) Northeastern, LLC ("AMTAX Fund"), which is a limited liability company incorporated in Delaware with two members. AMTAX Fund's managing member is Tax Credit Holdings III, LLC ("TCH III") and its non-managing member is GMAC Guaranteed Northeastern Tax Credit Fund, LLC ("GMAC"). TCH III is a limited liability company incorporated in Delaware that is indirectly but solely owned by Alden Torch Financial LLC ("Alden Torch"). All of Alden Torch's members are citizens of Colorado. GMAC is a limited liability company incorporated in Delaware with two members. The first member is TCH III. The second member is New York Community Bancorp, Inc., a Delaware corporation with its principal place of business in New York.

12. Plaintiff Protech is an Ohio limited liability company with a sole member, Tax Credit Holdings VIII, LLC ("TCH VIII"). TCH VIII is a Delaware limited liability company that is indirectly but solely owned by Alden Torch. All of Alden Torch's members are citizens of Colorado.

13. Defendant Full Circle is an Illinois limited liability company and, on information and belief, is a citizen of Illinois.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiffs are citizens of Colorado and New York, while Defendant, on information and belief, is a citizen of Illinois.

15. Plaintiffs seek declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, which grant this Court authority to declare the rights and other legal relations surrounding questions of actual controversy that exist between the parties.

16. Venue is proper in the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1391 because the Project is located in this District, and because the events giving rise to this partnership dispute relate to the Project. Further, pursuant to Section 13.7.D(i)(A) of the LPA, the parties irrevocably agreed that any suit arising from the LPA can be brought in any United States District Court located in Illinois.

## FACTUAL ALLEGATIONS

### The LIHTC Program

17. Congress passed the LIHTC provisions in Section 42 of the Internal Revenue Code to promote private investment in the development of affordable housing. Section 42 permits

5

investors who commit capital to developing and operating affordable housing projects to earn tax credits generated by those projects, as well as tax deductions arising out of any depreciation of the investor's capital account and other benefits attendant to their ownership interests.

18. LIHTC investments are typically structured as a limited partnership between an investor limited partner, who provides the necessary capital, and a general partner, who is responsible for developing and operating the project (and earns substantial fees for doing so).

19. For a LIHTC investment to be treated as a partnership for tax purposes, the tax credits generated by the LIHTC project must be allocated in accordance with the partners' respective ownership interests in the partnership that owns the project—i.e., the partnership must have "economic substance." As a result, limited partners such as AMTAX typically hold a 99% or greater ownership interest in the project partnerships in which they invest.

20. LIHTC partnership agreements like the one at issue here often contain provisions giving the various partners certain rights to effect a disposition of the project following the end of the Compliance Period. These provisions can include options to purchase, forced sale rights, and rights of first refusal.

**The Partnership and the Project**

21. The Partnership was formed in 2004 for the purpose of developing, owning, operating, and ultimately selling or otherwise disposing of the Project. The Partnership and the respective rights and obligations of its partners are governed by the LPA and Illinois law.

22. As the Investor Limited Partner, AMTAX made substantial capital contributions to the Partnership in connection with the development and operation of the Project and holds an ownership interest in the Partnership of 99.98%.

23. As the General Partner, Full Circle contributed a mere $50 in equity to the Partnership and owns only 0.001% of the Partnership. Notwithstanding its minimal ownership interest, Full Circle exerts significant control over the management and operations of the Project and has earned substantial fees and other economic benefits in exchange for its services.

**The Partnership Agreement**

24. Section 7.4.J of the LPA provides that after the end of the Compliance Period, Full Circle can exercise the Option to purchase the interests of the Limited Partners "for cash, based on the amount they would receive if the property were sold at the fair market value . . . , and the proceeds of such sale were applied in accordance with this Agreement." Section 7.4.J further provides that the "appraiser shall determine the fair market value for the Project, as of the date of the exercise of the option . . . and such value shall be final and binding on the parties hereto."

25. Section 7.4.J contemplates that the General Partner will select an appraiser who is "independent" and employed with a nationally-recognized appraisal firm. (*See* **Ex. A** at 53 (permitting the General Partner to select an "independent" appraiser with "MAI or equivalent designation" from LaSalle Bank National Association's or Deutsche Bank Berkshire Mortgage's "approved list").

26. Section 7.4.J provides that "if Deutsche Bank Berkshire Mortgage or LaSalle Bank National Association do not have an approved list," then the General Partner must obtain AMTAX's approval of the appraiser, "provided such approval shall not be unreasonably withheld."

27. CBRE and JLL are nationally-recognized appraisal firms.

28. AMTAX approves of the selection of an independent appraiser—i.e., an appraiser who has not previously performed work for the General Partner or its litigation counsel—from CBRE or JLL, provided such appraiser specializes in LIHTC-related valuations.

29. Section 7.4.I of the LPA expressly references and incorporates Section 7.4.J, and contemplates a purchase of the Limited Partners' interests within twelve months.

30. Under the LPA, a sale of the Project is a dissolution event pursuant to Section 2.5.A(i), which necessarily triggers the liquidation provisions in Section 6.3. Full Circle has mistakenly maintained that Section 6.2 of the LPA should instead be used to calculate the amount of proceeds the Limited Partners would receive in the event of a hypothetical sale of the Property, but this ignores the plain language of Section 6.2.B, which explicitly states that it is "subject to the provisions of Section 6.3 . . . ." This language confirms that if there is a difference between the percentage of residual sale proceeds that the Limited Partners would be entitled to receive under Section 6.3 as compared with Section 6.2.B, then Section 6.3 controls.

31. Section 6.3, in turn, requires that residual sale proceeds from a Terminating Capital Transaction be distributed pro rata based on the partners' respective positive Capital Account balances. This language is consistent with the Partnership's intention—as memorialized in the LPA—to comply with the "alternate economic effect test" codified in Section 1.704-1(b) of Title 26 of the Code of Federal Regulations, which requires that residual proceeds from a liquidating event such as the sale of substantially all the assets of the Partnership be divided pro rata in accordance with the partners' positive capital account balances, after all adjustments resulting from the sale.

## CAUSES OF ACTION

### COUNT I: DECLARATORY JUDGMENT (CAPITAL ACCOUNT)

### (28 U.S.C. §§ 2201 – 2202; 735 ILCS 5/2-701)

32. The Limited Partners repeat and reallege the allegations contained in each and every preceding paragraph of their Complaint as if set forth herein in full.

33. AMTAX, Protech, and Full Circle are parties to the LPA, which governs their rights and obligations to each other and to the Partnership in their respective capacities as the Partnership's Investor Limited Partner, Special Limited Partner, and General Partner.

34. The LPA is a valid, binding, and enforceable contract.

35. The Limited Partners have performed all their obligations under the LPA.

36. An actual controversy has arisen and now exists between the Limited Partners, on one hand, and Full Circle, on the other, regarding their rights and obligations under the LPA.

37. The Limited Partners are entitled to a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure that Section 7.4.J of the LPA requires the Limited Partners' interests to be valued based on what the Limited Partners would receive if the Property were sold at fair market value and residual sale proceeds were distributed to the partners pro rata based on their positive capital account balances.

### COUNT II: DECLARATORY JUDGMENT (APPRAISAL PROCESS)

### (28 U.S.C. §§ 2201 – 2202; 735 ILCS 5/2-701)

38. The Limited Partners repeat and reallege the allegations contained in each and every preceding paragraph of their Complaint as if set forth herein in full.

39. AMTAX, Protech, and Full Circle are parties to the LPA, which governs their rights and obligations to each other and to the Partnership in their respective capacities as the Partnership's Investor Limited Partner, Special Limited Partner, and General Partner.

40. The LPA is a valid, binding, and enforceable contract.

41. The Limited Partners have performed all their obligations under the LPA.

42. An actual controversy has arisen and now exists between the Limited Partners, on one hand, and Full Circle, on the other, regarding their rights and obligations under the LPA.

43. The Limited Partners are entitled to a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure that Section 7.4.J of the LPA requires the General Partner to select an appraiser from CBRE or JLL who specializes in LIHTC-related valuations and has not previously performed work for the General Partner or its litigation counsel, and to close on the purchase of the Limited Partners' interests within twelve months.

## PRAYER FOR RELIEF

**WHEREFORE**, the Limited Partners pray for the following relief:

a. A judicial declaration pursuant to Rule 57 of the Federal Rules of Civil Procedure that Section 7.4.J of the LPA requires the Limited Partners' interests to be valued based on what the Limited Partners would receive if the Property were sold at fair market value and residual sale proceeds were distributed to the partners pro rata based on their positive capital account balances.

b. A judicial declaration pursuant to Rule 57 of the Federal Rules of Civil Procedure that Section 7.4.J of the LPA requires the General Partner to select an appraiser from CBRE or JLL who specializes in LIHTC-related valuations and has not previously performed work for the General Partner or its litigation counsel, and to close on the purchase of the Limited Partners' interests within twelve months.

c.  An award of all monetary damages, costs, expenses, and attorneys' fees to the extent permitted by statute, contract, or equitable principles; and

d.  Such other and further relief as the Court may deem just and proper.

DATED: October 2, 2023

By: */s/ Livia M. Kiser*

Livia M. Kiser
Abigail H. Terry
Tatum Ellis
KING & SPALDING LLP
110 North Wacker Drive, Suite 3800
Chicago, Illinois 60606
Ph: 312-995-6333
Fax: 312-995-6330
lkiser@kslaw.com
aterry@kslaw.com
tellis@kslaw.com

Eric S. Pettit
(*pro hac vice application to be submitted*)
Craig H. Bessenger
(*pro hac vice application to be submitted*)
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Ph: 213-218-4004
Fax: 213-443-4310
epettit@kslaw.com
cbessenger@kslaw.com

*Counsel for Plaintiffs AMTAX Holdings 436, LLC, Protech 2004-D, LLC*